1            IN THE UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF ARKANSAS

3                   CENTRAL DIVISION

4

5   UNITED STATES OF AMERICA,              No. 4:18-CR-00267-BSM-1

6                    Plaintiff,            September 25, 2020
                                           December 14, 2020
7        v.

8   JONATHAN STACY BERRIER,
                                              Little Rock, Arkansas
9                    Defendant.

10

11      **TRANSCRIPT OF CHANGE OF PLEA AND SENTENCING**
            BEFORE THE HONORABLE BRIAN S. MILLER,
12             UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES:

15  On Behalf of the Government:

16      KRISTIN BRYANT, Assistant United States Attorney
        JOHN RAY WHITE, Assistant United States Attorney
17          U. S. Attorney's Office
            P.O. Box 1229
18          Little Rock, Arkansas 72203-1229

19

20  On Behalf of the Defendant:

21      DANNY W. GLOVER, Attorney at Law
            Glover & Roberts Law Office
22          405 US-64
            Wynne, Arkansas 72396

23

24      Proceedings reported by machine stenography and displayed
    in realtime; transcript prepared utilizing computer-aided
25  transcription.

Suzanne M. McKennon, CSR, CRR, RMR
United States Court Reporter

```
1                          INDEX

2


3


4  September 25, 2020. . . . . . . . . . . . . . . . . . p. 3
       Change of Plea
5
   December 14, 2020. . . . . . . . . . . . . . . . . . .p. 29
6      Sentencing

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1     (Proceedings commenced in open court on September 25, 2020.)

2          THE COURT:  All right.  You can be seated.  All

3   right.  The last issue we have on the docket today is the case

4   of United States of America versus Jonathan Berrier.  The case

5   number is 18-CR-267.  Mr. Berrier is in the courtroom.  He was

6   just brought over from Mason, Tennessee.  He's here with his

7   lawyer Danny Glover, and the United States is being represented

8   by Kristin Bryant.

9          Mr. Berrier, this case is set for trial on Monday.

10  And I received notice from Counsel -- well, let me swear you in

11  first.

12          Do you swear to tell the truth, the whole truth, and

13  nothing but the truth so help you God or under penalty of

14  perjury?

15          THE DEFENDANT:  I affirm.

16          THE COURT:  Yes.

17          MR. GLOVER:  May he affirm, Your Honor?

18          THE COURT:  That's fine.  You can.

19          Mr. Berrier, this case is set for trial on Monday.

20  This is Friday before trial.  And I received a note from

21  Mr. Glover yesterday asking that I appoint Counsel for you or

22  that you be allowed to change Counsel.  And I told Mr. Glover

23  that I would not -- I sent an e-mail back saying that I would

24  not allow you to change Counsel at this point.

25          I mean, this case has been on the docket a couple

1  years, and we're set for trial on Monday, and I said we're

2  going to try the case.  Today, I was -- I had seven other cases

3  set today, pleas and sentencings and other things, and I got a

4  note that you wanted to come in and change your plea.

5           First thing, before we proceed any further, is that

6  what you want to do?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  And, you know, let's walk through

9  this so we can talk about it a little bit.  First thing, let me

10  get a little background information from you Mr. Berrier.

11  First, how old are you?

12           THE DEFENDANT:  53.

13           THE COURT:  And how much education do you have?

14           THE DEFENDANT:  Ninth grade.

15           THE COURT:  And have you had any drugs, alcohol, or

16  any medication that would make it difficult for you to

17  understand what we're doing?

18           THE DEFENDANT:  No.

19           THE COURT:  Do you understand why you're in the

20  courtroom this afternoon?

21           THE DEFENDANT:  Can you repeat that?

22           THE COURT:  Do you understand why you're in the

23  courtroom this afternoon?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Now, you've been represented by

1   Mr. Glover.

2           THE DEFENDANT:  Yes.

3           THE COURT:  You had asked, you know, to let him go

4   and start over.  Are you satisfied with or dissatisfied with

5   the legal representation he's given you so far?

6           THE DEFENDANT:  I'm not completely happy with it, but

7   I understand it.

8           THE COURT:  And, Mr. Glover, have you had a chance to

9   talk to Mr. Berrier today?

10          MR. GLOVER:  I have, Your Honor.

11          THE COURT:  Is there anything about Mr. Berrier that

12  would lead you to believe that he is not competent to go

13  forward with the plea?

14          MR. GLOVER:  No, Your Honor.  I think he's competent

15  to go forward.

16          THE COURT:  Okay.  Let's talk this through,

17  Mr. Berrier.  It is my understanding that you want -- this

18  indictment is dated June the 6th of 2018, and it's a two-count

19  indictment.  And it's my understanding that you want to enter a

20  plea of guilty to Count 1, and that the government would move

21  to dismiss Count 2.  Is that the case?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Okay.  Now, let me read Count 1 to you,

24  just so we have a record that you understand what you're

25  pleading guilty to.  This says, "From on or about March 2007

1  through on or about May 4th, 2018, in the Eastern District of

2  Arkansas, Jonathan Stacy Berrier, using facilities and means of

3  interstate commerce, did knowingly persuade, induce, entice,

4  and coerce an individual, T.H., who had not attained the age of

5  18 years, to engage in any sexual activity for which any person

6  can be charged with a criminal offense, namely a criminal

7  offense under Arkansas law, Sexual Indecency with a Child.

8            Is that what you're entering a plea of guilty to?

9            THE DEFENDANT:  Yes.

10           THE COURT:  Okay.  Now, I'm going to go over all of

11 your rights with you, and I'm sure Mr. Glover has gone over

12 this with you.

13           You understand you're not required to enter a plea of

14 guilty?

15           THE DEFENDANT:  Yes.

16           THE COURT:  And you understand that, if you were to

17 stand on your plea of not guilty, we would just go to trial on

18 Monday.

19           Do you understand that?

20           THE DEFENDANT:  Yes.

21           THE COURT:  Do you understand that you have a lawyer.

22 But if, you know -- under most circumstances if you can't

23 afford one, we would appoint one to represent you.  You

24 understand, if we were to go to trial on Monday, you would

25 enter the courtroom with the presumption of innocence, and that

1    you don't have to prove or disprove anything to the jury.  In

2    fact, you have a right to remain silent and to be free from

3    self-incrimination, which means the government can't come in

4    here and put you on the witness stand and make you testify

5    against yourself.  And the jury cannot hold that against you.

6    And that's true because the government has the burden of

7    proving the case against you.  You don't have to prove or

8    disprove anything.

9              Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  In a case like this, the government would

12   come in and put on its witnesses who would testify about what

13   they know.  And you would have a right to confront those

14   witnesses against you.  And the way you would do that is

15   Mr. Glover would cross-examine them and ask them questions to

16   make sure that the testimony they are giving is truthful and

17   accurate.

18             Also, in a case like this, from what I understand,

19   there are text messages, e-mails, those types of things,

20   electronic communications.  So the government would come in

21   here and want to introduce tangible or physical evidence, those

22   statements and those texts and different things like that, any

23   photos or any -- I think they have -- even have some cell

24   phones or stuff like that.  I heard about that at the

25   suppression hearing.

1          They would probably come in and want to introduce
2  those into evidence.  You would have a right to object to
3  those.  And that was part of the suppression motion.  And then
4  I would have to decide whether the Rules of Evidence allow
5  those to come into evidence.
6          Now, once the government puts on its case, then, you
7  know, if you have witnesses who can testify for you, you have a
8  right to call those witnesses to testify.  And, Mr. Berrier,
9  although you have a right not to testify, if you were to choose
10  to testify, you would have the right to sit on the witness
11  stand and tell the jury what happened and what didn't happen.
12  Just understand that, if you testify or if you have witnesses
13  who testify, the government would have the right to
14  cross-examine you and your witnesses -- just like you did --
15  you had the right to cross-examine their witnesses, to make
16  sure that the testimony you are giving is truthful and
17  accurate.
18          Once all the evidence is in, we have 12 jurors -- we
19  would have 12 jurors, and those jurors would have to make a
20  decision, and they would have to be -- and that decision would
21  have to be unanimous.  So all 12 of those jurors would have to
22  agree on a verdict.  So if we had 11 jurors who thought you
23  were guilty and one juror who thought you were not guilty,
24  that's not a verdict.  If we had 11 jurors who thought you were
25  not guilty and only one juror who thought you were guilty, that

1   is not a verdict, either.  Under either of those circumstances,

2   I would have to declare a mistrial, and then it would be up to

3   government to decide whether it wants to bring the case back to

4   trial.

5          Let's say we have a unanimous jury.  If those jurors

6   determine that the government proved the case against you

7   beyond a reasonable doubt, those jurors will find you guilty.

8   If the jurors determine that the government did not prove the

9   case against you beyond a reasonable doubt, the jury will find

10  you not guilty.  Now, Mr. Berrier, if you're found not guilty,

11  then your case is over, and the government can't bring this

12  case against you again.

13         If you're found guilty, you have a right to an

14  appeal.  On appeal, your case would go to three judges sitting

15  in St. Louis.  That is where our Court of Appeals is here.  And

16  those judges would not hear new evidence.  At the appeals

17  stage, what would happen is -- you see the court reporter we

18  have here?  She would be at the trial, and she would type up

19  the trial transcript plus the hearing transcripts that we've

20  had leading up to trial.  And she would send those to the Court

21  of Appeals.

22         Mr. Glover, or whoever represents you on appeal,

23  would write a brief to the Court of Appeal explaining all the

24  mistakes I made during the course of your trial that caused you

25  to lose.  And in response, the government would file a brief,

1    of course, saying that I didn't make any mistakes, or they

2    would argue that he might have made a mistake in certain

3    circumstances, but those are not the -- that's not what caused

4    Mr. Berrier to lose; it was the other evidence that we

5    introduced in the trial.

6          And the Court of Appeals would read the brief and

7    determine if I made mistakes that caused you to lose.  If the

8    Court of Appeals determines that I did make mistakes that

9    caused you to lose, it would reverse the jury's verdict, send

10   the case back down here, and we would try your case again.

11         If the Court of Appeals determines that I did not

12   make mistakes that caused you to lose, the Court of Appeals

13   would affirm the jury's verdict, and your case would be over.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  And you understand that those are the --

17   you give up those rights by entering a plea of guilty because

18   we won't have a trial.  I'll just enter a judgment of guilty

19   based on the plea you enter here today.  Also, with regard to

20   appealing your case, you know, by entering a plea of guilty,

21   it's very difficult to have your guilty plea set aside.

22         You can appeal your sentence if the government

23   commits misconduct, if it's determined that Mr. Glover

24   inadequately represented you or did not provide you adequate

25   legal representation, or if I give you a sentence above the

1   guidelines range.  Under those circumstances, you would have a

2   right to appeal.  But if those circumstances were not present,

3   you would not have a right to appeal.

4            Do you understand?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Okay.  You understand that we don't have

7   an expungement law in the federal system?  So this will go on

8   your record, and I don't have a way of ever expunging your

9   record.

10           Do you understand that?

11           THE DEFENDANT:  Yes.

12           THE COURT:  Have you had a chance to speak to

13   Mr. Glover about the possible sentence you could receive?

14           THE DEFENDANT:  Yes.

15           THE COURT:  So he's probably explained to you that,

16   in the federal system, we have our law that tells me what the

17   minimum and maximum sentences are that I can give you.  I have

18   to give you a sentence within the range provided by the law.

19   In addition to the law, we have sentencing guidelines that help

20   me determine what an appropriate sentence is.

21           I am not required to give you a sentence within the

22   range provided by the guidelines as long as I give you a

23   sentence within the range provided by the law.

24           Do you understand that?

25           THE DEFENDANT:  No.

1          THE COURT:  Okay.  And I get it.  Okay.  We have the
2     law.  You know Congress enacts laws; right?
3          THE DEFENDANT:  Uh-huh.
4          THE COURT:  And in the law it tells me that there is
5     a certain range of punishment I can give you.  And I'm just
6     going to give you an example here.  Say you're -- I think here
7     the amount of punishment you could get by law for this
8     particular crime is from 10 years to life in prison.  Okay?  I
9     have to give you a sentence within 10 years or life.  So if I
10    wanted to give you a two-year sentence, I can't do it by the
11    law, because it says what I have to give you.
12          Within that range of punishment, there are
13    guidelines, or we have guidelines that say, "Okay.
14    Mr. Berrier, by the guidelines based on these certain
15    calculations we do, should get between 10 years and 12 years."
16    Well, if I came in and you had all of this stuff in your
17    background and I figured you needed 50 years, I could give you
18    a sentence above the guidelines.
19          Also, sometimes in cases like this -- and I don't
20    think it will be here, Mr. Berrier.  Some of these cases will
21    have a mandatory minimum sentence like 10 years; right?  But
22    then the guidelines might say, for somebody with your criminal
23    history, your guidelines range would be eight to -- or would be
24    seven to nine years.  Well, I can't give you a guidelines range
25    there because it's not within the range provided by the law.

1          THE DEFENDANT:  Uh-huh.

2          THE COURT:  And so that's the way it normally works

3    is I don't have to give you a guidelines range -- I mean

4    guidelines range sentence.  But I do have to give you a

5    sentence within the range provided by the law.  What the

6    guidelines do is they help -- they were put in place so judges

7    all over the country would give fairly uniform sentences.  What

8    the Sentencing Commission determined is that you might have a

9    judge sitting in Arkansas who might give a sentence that is

10   different than a judge sitting in California or a judge sitting

11   in New York, and so they came up with the guidelines so that

12   you could have somewhat uniform sentencing around the country,

13   and it wouldn't be based on, you know, one judge being a little

14   harsher on a crime and another judge being less harsh.

15         Do you understand that?

16         THE DEFENDANT:  May I -- can I speak?

17         THE COURT:  Well, ask your lawyer.  I wouldn't want

18   you to say anything out of hand.

19         THE DEFENDANT:  No.  I just wanted to tell you

20   basically it says -- the way my lawyer explained it to me is

21   that, because the range is below the minimum of 10 years,

22   10 years becomes the standard.

23         THE COURT:  Okay.

24         THE DEFENDANT:  And anything over the 10 years, then

25   I can appeal.

THE COURT:  What I was about to say is just what I explained to you.  That's right.  Here, I don't know what the guidelines range is, and I was going to get to that with you. Y'all might have come up with some preliminary calculations.

But What happens is for the guidelines is you get a certain number of points for this conviction, you get a certain number of points for any prior convictions you have, and you add those numbers up.  And the easiest way to explain it -- I am sure Counsel has gone over it with you.  But you add those numbers up, and you look on a chart, and it tells you what your guidelines range is.

In this circumstance you could actually have a guidelines that is shorter than what the mandatory minimum is. And so typically what happens in those cases is -- typically, you know, I can't sit here and tell you, Mr. Berrier, what I'm going to do.  But typically, you'll end up getting the mandatory minimum sentence, whatever that is.  And so if that's what Mr. Glover explained to you, that's right.

And then, if you were to get a -- if you were to get a sentence above that, then you could appeal that sentence.

THE DEFENDANT:  Okay.

THE COURT:  And so here, like I said, I can't tell you what your guidelines range is.  And although you've done preliminary calculations, I just have to wait before I get probation's report before I know for real.

1        For this particular crime, or count, the statutory
2  range or the range based on the law is not less than 10 years
3  of imprisonment, like I said up, to life, a fine not to exceed
4  $250,000, or up to $250,000, not less than five years of
5  supervised release -- so, you know, you could get prison time
6  and then get a term of supervised release from five years up to
7  life.  And you could get a $100 special assessment.
8        Do you understand that?
9        THE DEFENDANT:  Uh-huh.
10       THE COURT:  Is that a "Yes"?
11       THE DEFENDANT:  Yes.
12       THE COURT:  And the reason I asked you to say it
13  audibly is so the court reporter can pick it up.
14       THE DEFENDANT:  (Indicating.)
15       THE COURT:  Now, you understand that, if I were to
16  give you a sentence longer than what you expect -- so, say, you
17  come in here and you say, "Well, I think the judge will give
18  you 10 years," and I give you 11 years, you know, you can't
19  come in and withdraw your plea of guilty?
20       THE DEFENDANT:  Uh-huh, yes.
21       THE COURT:  Okay.  And that swings both ways.  So if
22  the government is thinking I'm going to throw you away in
23  prison for life and I come in here and give you 10 years, they
24  can't come in and take the deal off the table either.
25       Do you understand that?

1    THE DEFENDANT:  Yes.

2    THE COURT:  Okay.  We also don't have -- and this is

3  probably even more important.  We don't have parole in the

4  federal system.  And so I don't know how it is in North

5  Carolina, but I know in Arkansas, a 10-year sentence, you come

6  up for parole fairly quickly.  In the federal system, we do not

7  have parole.  So whatever amount of time I give you, you'll get

8  good time and those types of things, but you will not go before

9  a parole board and get out early.

10    Do you understand that?

11    THE DEFENDANT:  Yes.

12    THE COURT:  Okay.  There is a plea agreement in this

13  case; right?  Is that the case?

14    MS. BRYANT:  Yes, Your Honor.

15    THE COURT:  Ms. Bryant, would you state for the

16  record what the terms of -- the basic terms of the plea

17  agreement are?

18    MS. BRYANT:  Your Honor, the defendant will enter a

19  plea of guilty to Count 1, which charges him with enticement of

20  a minor.  The United States agrees to move for dismissal of the

21  remaining counts upon the Court's acceptance of the guilty

22  plea.  Paragraph 2 the plea agreement sets forth the elements

23  of the offense.  Paragraph 3 sets forth the statutory penalties

24  which the Court covered, not less than 10 years of imprisonment

25  to life, a fine of not more than $250,000, not less than five

1  years of supervised release, and a $100 special assessment.

2           Paragraph 4 sets forth several waiver provisions.

3  Specifically, the defendant is waiving his right to appeal all

4  nonjurisdictional issues including, but not limited to, issues

5  relating to pretrial motions, hearings, discovery, issues

6  relating to the negotiation, taking, or acceptance of the

7  guilty plea, or the factual basis for the plea, including any

8  issues related to the sentence imposed or issues that relate to

9  the establishment of the guideline range except he reserves the

10  right to appeal claims of prosecutorial misconduct and the

11  right to appeal his sentence if he makes the contemporaneous

12  objection because the sentence imposed is above the guideline

13  range established at sentencing.  The United States reserves

14  its right to appeal the sentence.  He waives his right to

15  collaterally attack his conviction at sentence and any

16  post-conviction proceeding except for claims based on

17  ineffective assistance of Counsel or prosecutorial misconduct.

18           Paragraph 5 sets forth several stipulations.

19  Specifically, the parties agree that the base offense level is

20  28.  He should receive a two-level increase because it involved

21  the use of a computer and a two-level increase because it

22  involved the commission of a sex act.  He's eligible for a

23  two-level reduction for acceptance unless he takes any action

24  between entry of guilty plea and imposition of sentence that is

25  inconsistent with acceptance.  The determination for the third

1   level will be made by the United States at sentencing.

2            He waives any and all challenges to searches,

3   seizures, arrests, statements, and forfeitures that have taken

4   place as of the date of the execution of this plea agreement.

5   The parties also understand the Court is not bound by this

6   stipulation.  The defendant further understands that, if the

7   Court does not accept the plea agreement, he is not entitled to

8   withdraw his guilty plea or otherwise be released from his

9   obligation under the agreement and addendum.

10           Paragraph 6 states the defendant understands that he

11  must register as a sex offender.

12           And I believe the rest is standard language, Your

13  Honor.

14           THE COURT:  Okay.  Mr. Glover, are there any other

15  terms that you want to put on the record?

16           MR. GLOVER:  No, Your Honor.

17           THE COURT:  All right.  Mr. Berrier, did you listen

18  to the statement given by the U. S. Attorney?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Were those terms that she just outlined

21  the terms that you understood were contained in your plea

22  agreement?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Having discussed all of your rights with

25  you, do you still want to enter a plea of guilty?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Have any threats or promises been made to

3     you to get you to plead guilty?

4          THE DEFENDANT:  No.

5          THE COURT:  Okay.  Are you pleading guilty

6     voluntarily?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And, Ms. Bryant, would you state

9     for the record what facts you would put on if we were to have a

10    trial on Monday?

11         MS. BRYANT:  Yes, Your Honor.  If we were to proceed

12    to trial on Count 1, the United States would intend to prove

13    that, in January of 2017, the defendant reached out to T.H., a

14    13-year-old minor, on Facebook.  The defendant and T.H. began

15    talking on Facebook messenger and eventually moved to talking

16    on FaceTime, through text messaging, and via telephone.

17         During the course of their conversations, T.O. --

18    T.H. told the defendant that she was 13 years old, and the

19    defendant eventually told her that he was 49 years old.

20         The defendant and T.H. communicated in these ways

21    from late 2016 through spring of 2017 and again from late 2017

22    through spring of 2018.  Even early in their conversations, the

23    defendant made sexually suggestive comments to T.H. and asked

24    her to perform sex acts on herself.  He cultivated a friendship

25    with T.H. and eventually they professed their love toward each

other.

The defendant sent at least two packages, each of which was intercepted before being delivered to T.H.  Each contained edible treats or other small gifts as well as a cell phone.

The defendant's sexual talk and innuendo to T.H. increased until he was asking her to let him watch, by electronic device, as she showered.  He described sexual activities he would like her to perform on him, told her he would like to have her for breakfast, and that he would like to have her on her mother's bed while recording with a video camera.  The defendant requested to see T.H.'s breasts and her bottom.  He also told T.H., "At moments like this I need a good woman giving me a blow job."  He then asked T.H., "Should I unzip, or do you want to do that?"  He told her, "It's sexier if you do it.  Better hurry.  He's trying to get out on his own."

During at least one FaceTime conversation, the defendant showed T.H. his penis, and T.H. showed the defendant her vagina.  The defendant told T.H. he wanted to see, touch, and kiss her breasts, described his penis to her, and told her that, rather than watching a musical, he would rather break the law with her.

He traveled from North Carolina to Arkansas in February and March of 2018.  On each occasion, he provided T.H.

1   with cell phones to use to communicate with him.  Text

2   messages, retrieved from a telephone provided by the defendant

3   to T.H., revealed other sexually explicit messages between the

4   defendant and T.H.

5          While in Arkansas in February 2018, the defendant and

6   T.H. spent T.H.'s school day together and engaged in vaginal

7   sexual intercourse.  After leaving Arkansas in February and

8   before returning in March, the defendant and T.H. continued

9   communicating.  The defendant continued to anticipate sexual

10  activity with T.H. upon his return trip.  For example, he

11  described to T.H. his fantasy about sex with her and said, "He

12  can't wait to do it again."

13         While in Arkansas in 2018, the defendant engaged --

14  excuse me.  The defendant and T.H. engaged in vaginal sexual

15  intercourse and oral sex, which are violations of Arkansas law.

16         THE COURT:  All right.  Mr. Berrier, did you listen

17  to the statement given by the U. S. Attorney?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Was her statement accurate?

20         THE DEFENDANT:  No.

21         THE COURT:  Okay.  What do you -- how are the facts

22  different than what she just laid out?

23         THE DEFENDANT:  February, we had sex one time.  I

24  told her I didn't want to have sex.  I put it in.  She said

25  she's scared.  I pulled out.  That was it.  There was no more

1  sexual contact.  That was it, in and out, done.

2             THE COURT:  Okay.

3             THE DEFENDANT:  I was more than happy to be done with

4  it, and I can show you text messages where I told her I didn't

5  want to do it in the first place.

6             THE COURT:  Let me ask you this, Ms. Bryant:  We

7  heard the statement as to what happened.  I think his matter --

8  I know his statement is sufficient to make out a factual basis

9  for the plea.

10             Is there anything else we need to take up on that?

11             MS. BRYANT:  No, Your Honor.

12             THE COURT:  Okay.

13             THE DEFENDANT:  And the other thing, I had -- I have

14  never seen her vagina on camera, ever.  And I have never shown

15  her my penis.  I mean, that's -- it's just that -- I know

16  it's -- I know it doesn't matter.  I broke the law, but it's a

17  technicality.  You know what I mean?  I want to plead guilty to

18  what I did.  I don't want to plead guilty to what I didn't do.

19             THE COURT:  I understand.

20             MR. GLOVER:  Judge, I think there may be some dispute

21  as to the exact acts that occurred from what Ms. Bryant read,

22  but the elements of the crime would be admitted to.

23             THE COURT:  And I think that is what Mr. Berrier did.

24  He said, although I disagree with how she said this happened,

25  but here is what did happen.  And based on what he said, that's

1    sufficient to support the plea of guilty.

2              MR. GLOVER:  Thank you, Your Honor.

3              THE COURT:  If the government -- you know, I just

4    want to give the government a chance to object or anything.

5              MS. BRYANT:  We agree with you, Your Honor.

6              THE COURT:  Okay.  All right.  Do you understand,

7    Mr. Berrier, the nature of the charges against you and the

8    maximum penalties you face?

9              THE DEFENDANT:  Yes.

10             THE COURT:  And how do you plead to Count 1 of the

11   June 6th, 2018, indictment?

12             THE DEFENDANT:  Can you read --

13             THE COURT:  What I was asking you is:  How do you

14   plead to Count 1 of the indictment?  Do you plead guilty or not

15   guilty to it?

16             THE DEFENDANT:  Guilty.

17             THE COURT:  Okay.  And did you, in fact, commit the

18   offense?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  And, Mr. Glover, do you know of

21   any reason why I should not accept the guilty plea?

22             MR. GLOVER:  I do not, Your Honor.

23             THE COURT:  All right.  I find the offense as charged

24   in Count 1 of the June 6th, 2018, indictment was committed by

25   the defendant.

1          I also find that, Mr. Berrier, you're entering this

2    plea of guilty voluntarily with full knowledge of the facts,

3    his rights, and the consequences that he faces.  And for those

4    reasons, I accept the guilty plea.

5          MS. BRYANT:  Your Honor, we move to dismiss Count 2.

6          THE COURT:  And that's granted.

7          Mr. Berrier, what will happen at this point -- I

8    think we discussed it a little bit -- probation will go out and

9    perform a presentence investigation and prepare a report.  A

10   copy of that report will go to Mr. Glover, and a copy will go

11   to the government.  And when Mr. Glover gets his copy of the

12   report, he'll send it to you and -- he'll send it to you.  What

13   I'd ask you to do is look at that report very closely to make

14   sure that the information contained in that report is accurate.

15   If there is anything in that report that is not accurate, let

16   Mr. Glover know, and he'll file an objection for you.

17         If there is something in that report -- and the

18   reason why that is important is because that's going to be what

19   I use to determine what an appropriate sentence is for you.

20   And here's what we'll do.  Mr. Glover, you know, has just been

21   elected judge over in my part of the state.  And so I know he's

22   going to take office on January the 1st, and here we are at the

23   end of September.  And so I think it's important that we get

24   the presentence report completed, get it in Mr. Glover's hands

25   as soon as we can, so that he can share it with you, and y'all

1    can get through it, and so that we can get you back in here for
2    sentencing before the end of the year.
3          I will talk to probation and see if we can move this
4    along a little more quickly than we normally do so we can try
5    to get your sentencing and everything wrapped up while we have
6    somebody who has been with your case all along and knows you
7    and knows your case.
8          But what I'd ask you to do is pay close attention to
9    the report, make sure that you tell Mr. Glover of any
10   objections you have to it, and he'll file an objection for you.
11   And normally those objections can be worked out.  And that's
12   going to be the information I use to determine what an
13   appropriate sentence is for you.  That's why it's important.
14         Once we get all of that in, we'll bring you back in,
15   and we'll sentence you at that time, Mr. Berrier.  Okay?
16         All right.  Is there anything else we need to take up
17   on this case today?
18         MS. BRYANT:  No, Your Honor.
19         MR. GLOVER:  No, Your Honor.
20         THE DEFENDANT:  Can I go -- I've got people who want
21   to kill me in Little Rock jail.  Can I please go back to where
22   I came from?
23         THE COURT:  If I'm not mistaken, they will get you
24   back to Mason as soon as possible.  I don't think you'll be
25   held here.  And I'll ask the marshals this.  I am not sure.  I

1    think they'll take you back fairly shortly.

2            Right?

3            THE MARSHAL:  Your Honor, it sounds like -- I've been

4    getting text messages.  He's going to be going back to Pulaski

5    County for the time being, for the weekend, and then get moved

6    back to Mason early next week.

7            THE COURT:  Okay.  Mr. Berrier is saying -- and I

8    don't know what the circumstances are for him over in Little

9    Rock.

10            THE MARSHAL:  Your Honor, if there's certainties that

11    is assigned under his name in our system captured --

12            THE COURT:  Say that again.

13            THE MARSHAL:  We'll see his certainties, if there is

14    people that he fears or whatnot documented.

15            THE DEFENDANT:  There is people that aren't

16    documented when I was there.  And there were people in the

17    Sheridan County that has been moved from there to Little Rock,

18    also.

19            THE MARSHAL:  We need to know those names, if there

20    is anyone separate from those people.

21            THE DEFENDANT:  Because one inmate there, his mother

22    was a Deputy Sheriff.  She did a background check on me and saw

23    that I was originally charged with the sexual assault that was

24    later reduced to a misdemeanor assault.  That got everybody in

25    the jail wanting to kill me, and then they started moving these

1   guys to Little Rock.

2           THE COURT:  Let me ask you this, Marshal:  How soon

3   can we get him back to Mason?  And I know it's Friday evening.

4   Trying to get him back there tonight might be difficult but --

5           THE MARSHAL:  It would have to be Monday or Tuesday,

6   Your Honor.  Probably Monday at earliest.

7           THE COURT:  Okay.  Is there not a jail maybe over

8   like, say, in Lonoke -- not Lonoke.  But over in Faulkner

9   County or somewhere we can stash him just so that he can make

10  it through --

11          THE DEFENDANT:  What about Sheridan?

12          THE COURT:  -- the weekend?

13          THE MARSHAL:  We have to organize that with transport

14  from that jail.  I would have to go make a phone call to see if

15  we can get transport down here to --

16          THE COURT:  Here's what I would ask you to do:  If

17  you can, please do.  I can't force you to do it, and you would

18  be accommodating me.  It's not something --

19          I can't force them to do it, Mr. Berrier.  I am just

20  trying to accommodate you.

21          If you can, try.

22          And, Mr. Berrier, if you can't, would you please

23  contact the jail and at least let them know that we have --

24  there is a security risk and see if they can at least try to

25  keep him separate from those who might be looking for him?  I

1   mean that's --

2          Mr. Berrier, that's the best I can do.  I can't --

3   we'll just have to see.  Okay?  All right.  Let's adjourn.

4          (Adjourned at 4:32 p.m.)

5                              -oOo-

1     (Proceedings commenced in open court on December 14, 2020.)

2          THE COURT:  For our next hearing, let's do a sound

3     check.  Can all the lawyers get close to a microphone so that

4     we can hear you?  And let me first ask Mr. Glover if he would

5     speak so we can see if we can hear him.

6          MR. GLOVER:  I'm here.  Can you hear me okay?

7          THE COURT:  I can.

8          Mr. Berrier, can you hear Mr. Glover?

9          THE DEFENDANT:  (Indicating.)

10         THE COURT:  And, Mr. Berrier, can you hear me?

11         THE DEFENDANT:  (Indicating.)

12         THE COURT:  And, Ms. Bryant, would you speak into the

13    microphone?

14         MS. BRYANT:  This is Kristin.

15         THE COURT:  Now, Mr. Berrier, I show that your

16    microphone is muted.  Is there a way to turn it on so we can

17    hear from you?

18         THE DEFENDANT:  Yes.

19         THE COURT:  Okay.  Great.  Is everybody ready to

20    proceed?

21         MR. GLOVER:  Mr. Berrier, did you need to speak with

22    me about anything privately before we start, or have we

23    discussed Friday all we need to discuss?  Do you think?

24         THE DEFENDANT:  I would like to talk to you for a few

25    minutes.

1    THE COURT:  Hey, let's do this:  I'm going it turn
2  off or sign out of this connection, because I don't think there
3  is way for Mr. Berrier to speak with Mr. Glover if I have this
4  on where I would not hear him unless I turned off my speaker.
5  And if I were to do that, there would be no way to assure you
6  that I have it turned off.  So I'm going to sign out.

7    What I would ask is for Ms. Bryant and everyone else
8  in the courtroom, including my courtroom deputy and everybody
9  else, to step out of the courtroom.  And what I would ask you
10 to do, Mr. Glover, is, once you've had a chance to confer with
11 your client, let Ms. Gardner know, and then IT will call me and
12 conference me back in.  Okay?

13    MR. GLOVER:  Okay.

14    THE COURT:  Just have them contact me once you're
15 ready.  And I'm going to sign off.

16    THE DEFENDANT:  This will be very brief.

17    THE COURT:  Okay.

18     (A brief recess was taken.)

19    THE COURT:  All right.  Let's call the case, and let
20 me see.  This is the case of United States of America versus
21 Jonathan Berrier.  The case number is 18-CR-267.  Mr. Berrier
22 is appearing by telephone conference from a holding area in
23 West Tennessee.  His lawyer is in the courtroom, Danny Glover,
24 and the United States is being represented by Kristin Bryant,
25 who is in the courtroom.

1      Let's do this and make sure we do another mic check.
2  Mr. Berrier, can you hear us?
3      THE DEFENDANT:  Yes, sir, but I'll keep my mic on
4  mute.
5      THE COURT:  Okay.  That's good.  And we'll give you
6  time when we need to hear from you.  Okay?
7      THE DEFENDANT:  Okay.
8      THE COURT:  And, Mr. Glover, would you speak, please?
9      MR. GLOVER:  This is Danny Glover.
10     THE COURT:  And, Ms. Bryant?
11     MS. BRYANT:  Yes, Your Honor.  And John Ray White is
12  also here with me.  We're going to tag team on some of this.
13     THE COURT:  Okay.  Mr. White, would you speak,
14  please?
15     MR. WHITE:  Yes, sir.  This is John Ray.
16     THE COURT:  All right.  Now, Mr. Berrier, as you can
17  tell, you are not physically in the courtroom in Little Rock.
18  I am not physically in the courtroom in Little Rock.  I am in
19  the courtroom in Helena, which is about halfway between where
20  you are and the courtroom in Little Rock.
21     Do you have any objection to proceeding with this
22  sentencing hearing by video?
23     THE DEFENDANT:  It's not working out like I thought
24  it would.  I'm in a room that is freezing.  I'm freezing to
25  death, so it comes across as me being shaky more than I am

1    already.  I'm scared to death right now.  I am sure you can
2    imagine.
3               THE COURT:  I understand that.
4               THE DEFENDANT:  And I just can't -- you know, my -- I
5    thought I would be on the phone with my attorney so I could
6    talk to him as, you know -- basically as the thing was
7    proceeding, because then, you know, basically, like, I would be
8    there and be able to talk to him, but I guess I'll leave it in
9    your hands to --
10              THE COURT:  Well, no.  Let's ask this question.  You
11   know, typically, we would have Mr. Berrier in the courtroom.
12   And I will tell you that, when we're dealing with the
13   punishments that are available to Mr. Berrier, I want to be
14   careful in how we do this.
15              Now, we have a couple things happening.  We have, of
16   course, coronavirus, which is making it difficult for people to
17   transport and do other things.  And then we have the fact that,
18   if we don't get this sentencing completed by December the 31st,
19   Mr. Berrier will lose his lawyer, and then we'll have to have
20   somebody else appointed to represent him who will have to get
21   familiar with the case and able -- to enable him or her to
22   support Mr. Berrier.
23              But, you know, the fact that Mr. Berrier is somewhat
24   reluctant to proceed without being able to talk to his lawyer
25   gives me a little pause as well.

1          THE DEFENDANT:  A friend of mine has been before you

2    in this -- who I am locked up with, and he assures me that

3    you're a fair judge.

4          THE COURT:  Well, but Mr. Berrier, I will say this:

5    Fairness is in the eye of the beholder, and fairness -- it

6    would depend on -- there are a lot of factors to take into

7    account when determining what a fair sentence is.  So I would

8    not have you rely on what I've done with -- because I could

9    come in here and give you the maximum allowed by law.  And then

10   I wouldn't want you to look at it and say, "I was treated

11   unfairly because I couldn't sit there with my lawyer and

12   communicate with him."

13         THE DEFENDANT:  I have a right to appeal if it goes

14   over what we agreed to in the plea agreement, so I have that

15   right to do that.  So I mean I think we should proceed.

16         THE COURT:  Okay.  Well, very good then.  I

17   appreciate that.

18         Anybody else want to make a record on any of this

19   before we proceed?

20         MR. GLOVER:  No, Your Honor.

21         MS. BRYANT:  No, Your Honor.

22         THE COURT:  Okay.  Hearing nothing from the lawyers,

23   let's proceed.  Now, Mr. Berrier, I took your plea on September

24   the 25th of 2020.  You entered a plea of guilty to Count 1 of

25   the indictment that charged you with knowing enticement of a

1   minor to engage in sexual activity.  You were represented by
2   Mr. Glover at that hearing, and you are represented by him now.
3          Are you satisfied with the legal representation he's
4   given you so far?
5          THE DEFENDANT:  Yes.
6          THE COURT:  Okay.  And at that time, I told you that
7   probation was going to go out and perform a presentence
8   investigation and prepare a report.  I have a report that is
9   dated November the 18th of 2020, and it was revised on December
10  the 9th of 2020.
11         Have you had a chance to take a look at that report
12  Mr. Berrier?
13         THE DEFENDANT:  Let me get it.  Ah, well -- let me
14  see here.  The one I have is -- was sent November 18th.
15         THE COURT:  Okay.  And that is the one -- that was
16  the initial report, but it has been revised.
17         Mr. Glover, do you have a copy of the revised report
18  that was issued on December the 9th of 2020?
19         MR. GLOVER:  I have one that was sent to me on
20  December 13th, 2020 at 7:28 p.m., I guess, last night.  The
21  only -- I think it just, basically, states the objections that
22  we raised.  There was an addendum to it that addressed our
23  objections.
24         THE COURT:  Okay.
25         MR. GLOVER:  The substance of it did not change.

1          THE COURT:  And do you have any objections to the

2     report?

3          MR. GLOVER:  We did have some objections, Your Honor,

4     to a few of the paragraphs.  Paragraph 12 of the report, we

5     object to.  Mr. Berrier objects to the statements at the end of

6     the paragraph that indicate he showed his penis to the minor

7     five or six times on FaceTime.

8          Mr. Berrier denies that -- disputes that the minor

9     sent Mr. Berrier a nude picture of her vagina.  He does admit

10    the minor sent a nude picture of her breast but denies any

11    other receipt of nude photographs from the minor.

12          THE DEFENDANT:  I said --

13          MR. GLOVER:  I'm sorry.

14          THE DEFENDANT:  There was two pictures, one of her

15    boobs and one of her butt.  There was no vagina pictures that I

16    know of.

17          MR. GLOVER:  Paragraph --

18          THE DEFENDANT:  That's what I wanted to say.

19          MR. GLOVER:  Paragraph 13 and Paragraph 33 address an

20    enhancement that probation office indicated was appropriate

21    under United States Sentencing Guidelines 4B1.15(b), and we're

22    objecting to that five-level enhancement under the guidelines.

23          THE COURT:  And hold on, Mr. Glover.  If I'm not

24    mistaken, the government has said that they did not anticipate

25    that enhancement.  Although they think it does apply, they did

```
 1    not anticipate it, so they're not seeking that enhancement.
 2              Am I right, Ms. Bryant, on that?
 3              MS. BRYANT:  Yes, Your Honor.
 4              THE COURT:  Okay.  And I think that is what prompted
 5    the motion for an upward variance.  So I think, as far as
 6    Paragraph 13 is concerned, the government is not seeking that
 7    enhancement, and so we'll calculate this without the
 8    enhancement.  But then we'll take up the issue as to whether I
 9    should give an upward variance later.
10              MR. GLOVER:  Thank you, Your Honor.  Paragraph 39
11    indicates that the defendant was sentenced to 60 days
12    incarceration and two years probation.  Mr. Berrier reported
13    that he served two years probation and no incarceration for the
14    misdemeanor offense that he was convicted of back in 2002, I
15    believe.  Let me see.  Yes, 2002.  I don't know if that makes a
16    big difference, but he did want to make that clear that he had
17    not served 60 days incarceration.  That concludes our
18    objections.
19              THE COURT:  Okay.  And I thought that there was an
20    objection to Paragraph 33 as well.  Is that not -- oh, that's
21    just -- well, that is the -- is a four-point enhancement.  And
22    let me see.  Hold on just one second.  I think that is just the
23    enhancement that is discussed in Paragraph 13.
24              MR. GLOVER:  Correct, correct.  Both paragraphs deal
25    with the same five-level enhancement.
```

1          THE COURT:  Okay.  And, Ms. Bryant, the probation
2    office issued a response to the objections and, I think,
3    essentially laid out its justification for the language in
4    Paragraph 12, and I think -- let me see.  Does it address
5    Paragraph 39?
6          MS. BRYANT:  No, Your Honor.  I don't think we
7    addressed Paragraph 39.  We were going to rely on the documents
8    that the probation office had.
9          THE COURT:  Okay.  And is Ms. Lawson in the
10   courtroom?
11         THE PROBATION OFFICER:  Yes, sir.
12         MS. BRYANT:  She is, Your Honor.
13         THE COURT:  Ms. Lawson, question for you.
14         THE PROBATION OFFICER:  Yes, sir.
15         THE COURT:  You've already -- there's been a response
16   to paragraphs 12 and 39.  On 39, did you just rely on the
17   documents from the court?
18         THE PROBATION OFFICER:  Yes, sir.  We have a copy of
19   the judgment and commitment order for the state of North
20   Carolina.  And on it, it lists that the term was of 60 days and
21   then 24 months probation.
22         THE COURT:  I understand.
23         THE PROBATION OFFICER:  And what may have happened --
24         THE COURT:  I understand.  You know, sometimes there
25   are times when a judge might issue a certain judgment and that

1  doesn't necessarily mean the person actually does the time

2  listed.

3         Mr. Berrier, the point here is that the judgment and

4  commitment order said, "60 days and two years probation."

5  Whether you served the entire 60 days is a totally different

6  story.

7         With regard to 12 -- hold on just one second,

8  Mr. Berrier.  You'll be able to speak.  With regard to 12, and

9  the showing of private parts, give me the information again.  I

10  have this response here.  But give me the basis upon which you

11  place that information in the PSR?

12         THE PROBATION OFFICER:  Your Honor, the government

13  submitted information to us that was listed in Paragraph 12.

14  We relied on the investigative material that they provided for

15  us, and that was the basis for that particular enhancement.

16         THE COURT:  And, Ms. Bryant, just for you, the

17  investigative material that -- upon which 12 was based, what is

18  that?

19         MS. BRYANT:  It --

20         THE COURT:  Was that the records of the

21  investigators?

22         MS. BRYANT:  And, Your Honor, if it's all right with

23  you, I'm going to let Mr. White address the objection --

24         THE COURT:  Okay.

25         MS. BRYANT:  -- as it relates to the exhibits.

1          MR. WHITE:  So, Your Honor, with respect to

2     Paragraph 12, the information that was relied on includes the

3     chat messages between the defendant and the victim as well as

4     statements that the victim gave to FBI Special Agent Johnson

5     and the forensic interviewer Ms. Michaels.

6          MS. BRYANT:  Mr. White, let me jump in here on this,

7     because this is one of the things that I was a little confused

8     about.  I saw the objections to the statements in Paragraph 12,

9     but when I read Paragraph 12, what it looked like to me is that

10    Paragraph 12 is a statement from the minor explaining to the

11    investigators what happened.  It's not -- it almost read like

12    it's not a statement of fact of what actually happened but it's

13    the minor's statement to the investigators telling them, "This

14    is what happened to me."  Am I reading that wrong?

15         MR. WHITE:  You are not.  You are not.

16         THE COURT:  Because what she says is -- what

17    Paragraph 12 says is "On July the 5th, 2017, the minor was

18    interviewed, and she admitted that she lied."  She said this;

19    she said that; this is her statement to the investigators.

20    It's not a statement that this is what we found to be true.

21    And if that's the case, I don't mind noting Mr. Berrier's

22    objection to it and his position that that didn't happen.  And

23    we can make a notation to the presentence report that that's --

24    that he says this didn't happen this way.  But we keep this

25    paragraph saying, well, from the minor's perspective, this is

1  what she says happened.

2          Is there any objection to that first, Mr. White, and

3  then I'll go to Mr. Glover?

4          MR. WHITE:  There is not, Your Honor.  And that

5  accurately reflects it.  With respect to the objections in

6  Paragraph 12, there is -- and there is actually -- as our

7  exhibits, you know, we're offering a number of exhibits, and

8  two of those exhibits are interviews:  One is audio with Agent

9  Johnson, and one is audio/video with Ms. Michaels.  And both of

10  those are just her telling her story to the investigative

11  person.

12          THE COURT:  Okay.  And, Mr. Glover, my preference is

13  to lodge your objection to Paragraph 12 so that there is a

14  record that Mr. Berrier objects to the statement given by the

15  minor, but that I don't sustain the objection to it.  I just

16  allow you to make that objection upon the record.  But I'll

17  give you last word on it.

18          MR. GLOVER:  Well, I think it's important that

19  Mr. Berrier has admitted there were some photographs sent of

20  breasts and buttocks, but he disputes any pictures of genital

21  areas on either the minor or himself being sent on FaceTime,

22  and that there is a dispute between the minor and Mr. Berrier

23  on that issue.

24          THE COURT:  So, Ms. Lawson, --

25          THE PROBATION OFFICER:  Yes, sir.

1          THE COURT:  -- put a notation in the presentence
2   report, Paragraph 12, as to what Mr. Berrier's objections are.
3          THE PROBATION OFFICER:  Yes, sir.
4          THE COURT:  But I'm going to leave the language in
5   there that this is what the minor says happened.  But then
6   Mr. Berrier objects to that language and says -- and just to
7   make sure that the PSR tracks what Mr. Glover just told us.
8          THE PROBATION OFFICER:  Yes, sir.
9          THE COURT:  That Mr. Berrier disagrees; this is what
10  he says happened.
11         THE PROBATION OFFICER:  Yes, sir.
12         THE COURT:  Okay.  Now, with regard to Paragraph 39,
13  I'm going to overrule the objection.  As to the days'
14  imprisonment and the two years probation, because the judgment
15  and commitment orders are what they are and that's what they
16  say.  But the objection is noted.
17         As to 13 and 33, the government does not -- the
18  government has stated that it did not anticipate that
19  enhancement.  And so I'm going to -- I'm going to sustain the
20  objection to the enhancement, but we're going to take up the
21  issue of the upward variance later in the hearing today.
22         And I'll adopt the presentence report with those
23  modifications.
24         MR. WHITE:  Your Honor, this is John Ray White, and
25  I -- let me bring up one thing about the Paragraph 13 and 33

1    objections, if that is all right,

2         THE COURT:  Yes, sir.

3         MR. WHITE:  And you've properly characterized what we

4    said that we didn't contemplate that whenever we were

5    negotiating the plea agreement, and I'm not going to object if

6    the Court -- it suits me and Ms. Bryant fine if the Court

7    denies or actually grants his objection.  But I do want the

8    Court to know that part of our exhibits that we're offering do

9    provide the factual basis for that, just in case something ever

10   comes up.

11        THE COURT:  I understand that.  And you've also

12   argued -- and I think you're probably right.  That in the

13   U. S. v. Rojas case, the Court has said that I can give that

14   enhancement and pay attention to that information.

15        MR. WHITE:  Correct.

16        THE COURT:  So I think you made your record.

17        MR. WHITE:  Thank you, Your Honor.

18        MS. BRYANT:  And, Your Honor --

19        THE COURT:  Now --

20        MS. BRYANT:  This is Kristin.  Just to make sure, we

21   had sent some exhibits earlier over that Ms. Gardner received.

22   I think they were marked Exhibits 1 through 4.  And then we've

23   marked the interview of the victim as 5 and 6.  We just want to

24   make sure that those can be admitted into the record.  The

25   messages that we referenced in our objections to -- our

1    response to the objections to the PSR.

2            THE COURT:  What time did you send those over today?

3            MS. BRYANT:  It would have been -- it was earlier

4    this morning.

5            THE COURT:  I am going to tell you I have been in

6    court since 10:00 o'clock this morning.  And I will tell you I

7    don't remember seeing those exhibits, and I have not seen them.

8    That doesn't mean that Raeanne didn't send them to me.  In

9    fact, I'm sure she did.  But I have literally been sitting

10   here -- hold on just one second.  Let me look at -- hold on

11   just one second.  Let me take a look.

12           At 12:14, I received an e-mail with four exhibits.

13   There are five attachments, but I have not looked at these.

14           MS. BRYANT:  Your Honor, I think that they're

15   unobjected to.  I think both parties stipulate some of these

16   have already been included in our motions, filings.  And

17   Mr. Glover has had access to them, so I don't think he objects

18   to their inclusion, and then the two audio copies of the

19   interviews.

20           THE COURT:  Well, here's the thing:  I wasn't

21   thinking so much as that is concerned.  I was thinking -- I

22   wasn't thinking so much as about the objections to those as I

23   was about giving me a chance to look at them so I could

24   consider them in determining what an appropriate sentence is.

25           MR. WHITE:  Your Honor --

1          THE COURT:  Yes, sir.

2          MR. WHITE:  They -- I don't know how many pages they

3    are.  It's a lot of pages and three hours of video.  But

4    Ms. Lawson did a good job of summarizing the high points in the

5    presentence report.

6          THE COURT:  Yes.

7          MR. WHITE:  And it's apparent that the Court has

8    already spent time with the presentence report.  And at least

9    for the government, her addendum that she included, which was

10   our responses to Mr. Barrier's objections --

11         THE COURT:  Yes.

12         MR. WHITE:  If the Court has read the presentence

13   report and even scanned our response, I think that the Court

14   has -- I don't want to tell you what you need to do or can't

15   control -- keep you from reviewing stuff that we submit, but I

16   think really the essence of the arguments are going to be

17   packaged in the presentence report and in our responses to

18   Mr. Berrier's objections.

19         THE COURT:  Okay.  All right.

20         MR. GLOVER:  I would agree with that.  I think the

21   exhibits basically are the evidence used by Ms. Lawson, and she

22   summarized those in the presentence report.

23         THE COURT:  Okay.

24         MR. GLOVER:  It would take you probably some hours to

25   read all of that.

1          THE COURT:  I will tell you I just pulled up one of
2     these, and I think it's Exhibit 3 and -- yeah.  Okay.  It's
3     something about seeing it in an exhibit which is a little
4     different than seeing it in a response though.  And so let's
5     proceed.
6          Is there any objection to me receiving the exhibits
7     that the government has proffered, Mr. Glover?
8          MR. GLOVER:  No, Your Honor.
9          THE COURT:  Okay.  I'll receive those.
10         And, Mr. Berrier, I think we discussed this a little
11    bit when you were in court.  In the federal system, we have our
12    law that tells me what the minimum and maximum sentences are
13    that I can give you.  I have to give you a sentence within the
14    range provided by the law.  And hold on just one second.  I'm
15    going to pull something up real quick.
16         All right.  And something can always go wrong when
17    you're appearing electronically so I am making sure I have
18    everything in front of me.  But, Mr. Berrier, I told you that,
19    in the federal system, we have our law that tells me the
20    minimum and maximum sentences are that I can give you.  I have
21    to give you a sentence within the range provided by the law.
22         In addition to the law, we have sentencing guidelines
23    that help me determine what an appropriate sentence is for you.
24    I am not required to give you a sentence within the range
25    provided by the guidelines as long as I give you a sentence

1  within the range provided by the law.

2          Do you understand that?

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  And based on the information I have in

5  front of me, the penalties that you face for enticement of a

6  minor is up to -- is from ten years to life of imprisonment, a

7  fine of not more than $250,000, a five-year term of supervised

8  release, and a $100 special assessment.

9          Do you understand that?

10          THE DEFENDANT:  Yeah.  My understanding is the

11  forfeiture was if the Court sees something on the PSR was that

12  because the -- my sentencing range was below the maximum

13  minimum, and the ten years because the maximum and minimum.

14          THE COURT:  Well, no.  I could still sentence you

15  based on the law all the way up to life of imprisonment.  For

16  guidelines purposes, if your guideline range is less than the

17  mandatory minimum, then essentially your guidelines range is

18  the mandatory minimum, if you understand what I mean, you know.

19          THE DEFENDANT:  My understanding was ten years was

20  the max and minimum, so it had to be ten years.

21          THE COURT:  No, I'm not required to give you a

22  sentence within the guidelines range though, Mr. Berrier.

23  Pursuant to the guidelines, that would be your -- the high end

24  of your guidelines range, but as far as the statutory penalty,

25  which is really the penalty that I'm held to, it's still ten

1  years to life.  The guidelines help me determine what an
2  appropriate sentence is for you, but they're not a requirement.
3          Let's calculate the guidelines and -- because I have
4  not removed the enhancement, the Chapter 4 enhancement.  So
5  let's calculate the guidelines.  Your base offense level is 28.
6  You receive a two-point enhancement for using a computer, and
7  you receive a two-point enhancement because the offense
8  involved the commission of a sex act, which brings you to a 32.
9          You receive a two-level reduction for acceptance of
10  responsibility, which brings us to a 30.
11          And does the government move for a third point?
12          MS. BRYANT:  Yes, Your Honor.
13          THE COURT:  Which brings us to a total offense level
14  of 29.  You have zero criminal history points, which results in
15  a criminal history category of I.  So by the guidelines,
16  someone who has a total offense level -- well, of 29 and a
17  criminal history category of zero -- I mean of I, you have a
18  sentencing guidelines range of 97 to 108 months, but because
19  there is a mandatory minimum, your guidelines range is
20  effectively 120.
21          And, Ms. Lawson, what were you going to tell me?
22          THE PROBATION OFFICER:  I think it's 87 to 108, sir.
23          THE COURT:  Okay.  Thank you for bringing that to my
24  attention because I'm sitting here doing this on the fly.  And
25  what I have here is was 80 -- was 97.  So it's 87 to 108.  But

1  since the mandatory minimum is 120 months, that is the

2  essentially effectively your guidelines range of 120 months.

3           And, Ms. Lawson, make sure I'm correct on this, but

4  the guidelines range for a fine, I have, is 35,000 to 250.

5  What is it?

6           THE PROBATION OFFICER:  It's 30,000 to 250, sir.

7           THE COURT:  30,000 to 250.  And hold on just a second

8  while I have you standing there.

9           Supervised release is from five years to life?

10          THE PROBATION OFFICER:  Yes, sir.

11          THE COURT:  And there is still a $100 special

12  assessment?

13          THE PROBATION OFFICER:  Yes, sir.

14          THE COURT:  Okay.  All right.  Now, did you

15  understand, Mr. Berrier, that that is what your range would be,

16  87 to 108 months of imprisonment?  So it's an effective

17  guidelines range of 120 months, a fine of 30,000 to 250,000,

18  and five years to life of supervised release, with a $100

19  special assessment.  Did you understand that?

20          Turn off your mute real quick.

21          THE DEFENDANT:  Yes.  I just don't know what is

22  listed to get here today.  It's been -- it's not happening, but

23  I wouldn't know how I would be able to pay it -- pay that.

24          THE COURT:  Now, Mr. Glover, do you want to make any

25  departure or variance argument?

1          MR. GLOVER:  No, Your Honor.  I would request that a
2     guideline sentence be imposed.
3          THE COURT:  And now I'll give the government a
4     chance -- I know the government you had a couple witnesses who
5     were wanting to come in and speak, and it's my understanding
6     that you want -- you move for an upward variance.
7          Have you had a chance to talk -- and let me go back
8     to Mr. Glover.  Have you had a chance to talk to your client
9     about the government's motion for an upward variance?
10          MR. GLOVER:  We briefly spoke before the hearing
11     began.  And I explained to him that the government was asking
12     for an upward variance based on the conduct that has been
13     alleged, and that we were opposing it.
14          THE DEFENDANT:  Is that the five-point variance?
15     Five-point enhancement?
16          MR. GLOVER:  No, it's not the five-level enhancement
17     under the guidelines.  It's just the government is requesting a
18     higher sentence than the guidelines suggest for reasons they'll
19     articulate.
20          THE COURT:  Let me hear -- Ms. Bryant, are you going
21     to make that argument, or is Mr. White going to present it?
22          MS. BRYANT:  I am, Your Honor.
23          THE COURT:  You can do that now.
24          MS. BRYANT:  Thank you, Your Honor.  And as we
25     stated, you know, we'll rely on the facts in our motion for

1   upward variance, but we would also note the defendant's age at

2   the time he committed the offense.  He was over the age of 50.

3   He knew very early on that he was communicating with a child

4   who was 13 years old.  It's not one of these where he was

5   surprised at the end to learn her age.  He learned how old she

6   was early on and continued this relationship with her for

7   months at a time, had very sexually explicit conversations with

8   her.

9            He came from North Carolina to Arkansas on three

10   occasions.  In February, he came here and engaged in a sex act

11   with her.  Then he came back in March and engaged in multiple

12   sex acts with her over a significant period of time, over her

13   week of spring break.

14            And then the Court can note in the PSR that, in April

15   of 2018, the FBI in North Carolina actually made contact with

16   Mr. Berrier and told him to cease all contact with the minor

17   and her family; yet a couple weeks later Mr. Berrier is sitting

18   outside the minor's residence after already being told by the

19   FBI to cease contact with her.

20            As discussed in our objections to the PSR, the Court

21   can see the sexually explicit nature of the conversation.  It

22   corroborates the statements that the minor made, while not

23   explicitly, implicitly implying that what she said was true:

24   The things that Mr. Berrier asked her to do; that when she got

25   out of the shower, he wanted her to put on her camera; he talks

about the things that he wants to do to her sexually; he's named her body parts to include her breasts as Mary Kate and Ashley and her vagina as the Batcave.

The Court can see the statements that both the minor wrote as well as her grandmother, who is here today, the impact that this had on her.  She was a 13-year-old girl, and Mr. Berrier was an adult.  And, again, he drove hundreds of miles on three separate occasions; two of those were to engage in sex acts with her.

The impact that his actions will have on the victim in this case will be with her for forever.  And I would note, as we stated in our motion for upward variance, the prior allegations that had been made against Mr. Berrier that related to the minor -- and I note his objection -- but also the details of the allegations that were made.

And in considering that and in looking at the two cases that we cited, one of which was from our district, it was a Judge Wilson case.  And in that case, that defendant didn't even engage in sex acts with the minor like Mr. Berrier did here.  We believe, considering the 3553(a) factors, that an upward variance to 180 months is warranted in this case.

As I stated, the minor's grandmother is here.  I know that she wrote a statement.  She has said that she is willing to read her statement to the Court.  I don't know if they have additional statements that they would like to make.  It is her

1    and her husband, and so I don't know how the Court would like

2    to handle that.

3              THE COURT:  Well, by law, I am permitted or required

4    to allow the victim to speak.  And these are the victim's

5    caregivers or the people who she lived with.  And so I will

6    allow them to get up and make a statement.  I will say this:

7    That I've read the statement that was provided.  And so I don't

8    mind if they want to get up and read that statement or if they

9    want to just give me something supplemental to that statement.

10             There was a part of that statement that was intended

11   for me and a part of it that was intended for Mr. Berrier.  And

12   so, I mean, they can handle it however they want to.  They can

13   speak directly to me or they can make the statement to

14   Mr. Berrier if they want to.  What I would ask them to do

15   though is to come and speak at the lectern.  And although I

16   will not be able to see them, at least I'll be able to hear

17   them and Mr. Berrier will be able to hear them, too.

18             MS. BRYANT:  Thank you, Your Honor.

19        (A discussion was held off the record.)

20             MS. BRYANT:  Your Honor, Ms. Houston will rely on the

21   fact that you have read her statement, but she does have just

22   one other statement she would like to make to the Court briefly

23   if that's okay.

24             THE COURT:  No.  That's fine.

25             MS. BRYANT:  Thank you.

1      MS. HOUSTON:  This is Lynn Houston, the victim's
2  grandmother.  And we just wanted to let you know that our
3  granddaughter had every intentions of being here to represent
4  herself, but late last night she realized that that was
5  emotionally impossible, and that she wanted to stand up for
6  herself but is not able to do that.
7      THE COURT:  I understand.
8      MS. BRYANT:  Thank you, Your Honor.
9      THE COURT:  Thank you.
10     All right.  Does the government intend to put on any
11  other information to help me make a decision with regard to the
12  motion for an upward variance.
13     MS. BRYANT:  No, Your Honor.
14     THE COURT:  Okay.  And, Mr. Glover, I know that you
15  object to the upward variance.  But would you -- do you have
16  any argument against it?
17     MR. GLOVER:  Should I just make the same argument
18  that I would be making for the guideline sentence, or do you
19  want a --
20     THE COURT:  Yes.
21     MR. GLOVER:  -- separate argument?
22     THE COURT:  Well, I would say just make your argument
23  with regard to what an appropriate sentence is and weave into
24  that argument why you think a range above the guidelines or
25  upward variance would be improper.

1    MR. GLOVER:  Your Honor, thank you.  We recommend the

2  guideline sentence of 120 months.  If you look at the

3  guidelines themselves, they actually suggest a penalty of 87 to

4  108 months.  So the statutory minimum itself is somewhat of a

5  variance upward to 120 months so there is somewhat of a

6  variance already built into that statute.

7    I would point out that Mr. Berrier has no previous

8  criminal history points, his only conviction being a

9  misdemeanor from conduct that happened in 1999 to which he was

10  sentenced in 2002, which that conduct occurred over 20 years

11  ago and was a misdemeanor.

12    Mr. Berrier has accepted responsibility in this case

13  of some serious, serious conduct.  In doing so, he saved the

14  government the time and expense of the trial, and he saved the

15  victim the trauma of having to come and appear in court and

16  testify.  He saved the Court time to be devoted to other cases.

17    I will point out that he is 53 years old and that he

18  has been locked up over two and a half years already in a

19  county jail or a holding facility, detention facility, and that

20  he does have some health issues.  And he is undergoing testing

21  for some cancer due to some bleeding that he's having that they

22  thought might be a urinary tract infection, but the tests

23  showed that was not the case.

24    I will point out, too, there is one paragraph in the

25  presentence report that addressed that Mr. Berrier did initiate

1  contact -- Paragraph 19 with the minor's family to warn them
2  that the minor's safety was in danger because he had gotten
3  word that she may be considering running away from home.  And
4  so even though it meant his own jeopardy, so to speak, he did
5  reach out and talk with the minor's -- and called the minor's
6  family to warn them of that.
7          So with all of that being said, we think a guideline
8  sentence would be appropriate.
9          THE COURT:  Mr. Berrier, do you want to make a
10 statement?
11         THE DEFENDANT:  It's kind of hard -- there is no
12 justification for what I've done.  Even though -- what do you
13 say? -- my intentions were good at first, it turned out wrong,
14         The third -- the third trip that I made to Arkansas
15 with my sister, I never gave information to give to my sister's
16 friend who was a private investigator.  It was not three trips
17 with three attempts to be in contact with the minor.
18         The -- it was -- what do you say?  I've told -- I've
19 told the victim that, you know, she had told me that her
20 stepdad had molested her and had taken nude pictures of her.
21 And I told her that, you know -- I said, "I'm sorry.  If he's
22 willing to do that, he's got pornography on his computer."  And
23 I told her how bad I hate porn and how bad it just messes with
24 your mind.  And I didn't want any pornography on my computers
25 on my cell phones or anything like that.  And those were in

1   text messages with the minor victim.  And that was before I

2   had -- that's when -- before I ever come out and met her.

3          And I introduced her to two adult females that I

4   wanted her to add on Facebook that they could talk to her and

5   me back off.  But over time, I just -- I had grown too attached

6   with her, and things went wrong.  And I apologize to her family

7   and (inaudible) the community.  I've feel like I've got to know

8   grandparents, and I think highly of them; they're good real

9   people.  And there's not enough of those people in this world.

10  And that's all.

11         THE COURT:  All right.  Here is the rub on this case,

12  as I see it, and all I can do is explain what I see.  I'll

13  start by saying I'm 53 years old, and I don't even like talking

14  to 13 year olds.  I mean, I'll talk to kids if they're with my

15  children, but I don't spend time having intimate

16  conversations -- and when I say "intimate," I mean in the old

17  English form of "intimate," about your day and about how are

18  you doing and about your life with 13 year olds.

19         I think, when we become adults, we transition from

20  being the friends of children to being their protectors.  And

21  adults always go wrong when we blur the lines of being the

22  adults in the room and the adults in society into becoming

23  friends, confidants, and pals of children.

24         Now, the question then becomes:  Why do we do it?  Do

25  we wake up one day and start intending to become the equals of

1   children?  And I'm not sure that we do.  I think that a person

2   who -- and I say this with all due respect, Mr. Berrier, your

3   statement that you were being friends with this person and

4   trying to protect her, I believe, in your mind, that might be

5   true.  And I know that there are people in the courtroom that

6   would probably say that is just a story you are making up.

7           But the mere fact that you became a friend and

8   confidant of a 13 year old indicates that you have some issues

9   that you need to deal with, because most of us wouldn't do

10  that.  And the problem with that is, if you're somebody who

11  engages in those types of intimate, personal relationships with

12  children, I don't know that there is -- that there is any --

13  except for treatment that helps you deal with that, I don't

14  know how we protect other children from you.

15          Now, the government moves for an upward variance, and

16  I think, based on the record, an upward variance is probably

17  appropriate.  But then the question then becomes one of these

18  days Mr. Berrier gets out, and when he gets out, he still needs

19  some help dealing with whatever is triggering him to engage in

20  this type of conduct.

21          And then I'll tell you, Ms. Bryant, I'll be very

22  honest with you -- and this is for the family, too, and for you

23  Mr. Berrier as well.  The follow-up conversations with the

24  minor are disturbing, but those don't lead me to determine what

25  type of sentence to give you.  It's the conduct itself.  You

1   know, if you had not had a sexual relationship with this child
2   and you were sending these messages back and forth to her, then
3   the messages themselves would be very important to me.
4          But when an adult has a sexual relationship with a
5   13 year old, that's a baby; that's a child, I mean, that's
6   sufficient to me to think that, you know, heavy -- a heavy
7   penalty has to be paid for that.
8          Now, back to the issue about the upward variance.
9   Okay.  Mr. Berrier has been in prison for two years.  If I give
10  him 15 years, he's in prison until he's 66, instead of in
11  prison until he's 60 -- what?  64?  Or no.  62 or one.  Does
12  the extra five years -- I know for punishment purposes, it may
13  be warranted.  But is there a societal reason for that extra
14  punishment?  I think there may be, Mr. Berrier, but I'm not --
15  I don't know.  And so I'll have to -- as I'm thinking through
16  that, as I'm sitting here talking, as everybody can tell.
17         But what I will say is that sex with a 13 year old,
18  even if it's consensual on her part, she doesn't have the right
19  to consent.  And so when -- Mr. Berrier, hold on, hold, hold
20  on.  No.  It's my turn to speak now.
21         So when it gets down to it, it's rape.  It's rape.
22  When you have sex with a girl that little, there is no
23  justification for it at all.
24         So here's what I'm going to do.  I am going to -- and
25  like I said, as everybody can tell, I'm not firm on all of

1    this.  But, Mr. Berrier, I think the -- hold on just one
2    second.  Let me do something very quickly.  I'm going to
3    calculate something here.
4             When was Mr. Berrier taken into custody in this case?
5             THE DEFENDANT:  May 4th.
6             MS. BRYANT:  May 4 of 2018.
7             THE COURT:  May 11th?
8             MS. BRYANT:  May 4th.
9             THE DEFENDANT:  May 4th.
10            THE COURT:  Hold on just one second.
11            Okay.  All right.
12            MR. GLOVER:  Your Honor, may I say something?
13            THE COURT:  Yes, sir, you can.
14            MR. GLOVER:  I don't know if it makes a huge
15    difference to the Court, but I think by the time Mr. Berrier
16    traveled here to Arkansas it in 2018, the minor was either 14
17    or 15.
18            THE COURT:  I understand.
19            MR. GLOVER:  It wasn't quite as young as you had
20    pointed out.
21            THE COURT:  I understand.  The initial contact -- so
22    you're saying the initial contact occurred at 13 but then --
23            MR. GLOVER:  Correct, correct.
24            THE COURT:  Okay.  I understand that, Mr. Glover, and
25    I appreciate you for making the record on that and bringing

1    that to my attention.  She's still a little girl.

2              And here's what I'm going to do, Mr. Berrier.  I'm

3    going to grant the government's motion for an upward variance.

4    And I'm going to order you to the Bureau of Prisons for a term

5    of 180 months.  And I'm going to order that, while you're

6    incarcerated, that you receive intensive sexual offender

7    treatment and educational and vocational programs.

8              I am going to sentence you to a term of supervised

9    release.  Now, you'll be 66 when you're eligible to get out.

10   I'm going to give you ten years of supervised release.  That

11   will take you to 76.  I am going to order that you participate

12   in mental health treatment in a program provided by the

13   probation office.  I'm going to order you to pay a $10 co-pay

14   for that treatment based on your ability to pay it.  If you

15   cannot afford it, it will be waived.  The maximum co-pay for

16   any month will be $40.

17             I'm going to order that the probation office provide

18   the state with any information required to under the sexual

19   predator and sexual offender notification statutes, and I'm

20   going to direct that you report to these agencies personally

21   for required additional processing, such as an interview and

22   assessment, photographing, fingerprinting, polygraph testing,

23   whatever those agencies require.

24             I'm going to order you to participate in sexual

25   offender treatment program under the guidance of the probation

1    office and abide by the rules, requirements, and conditions of
2    that program.
3         I'm going to order you to pay for the cost of any
4    polygraph testing or any other co-pay that's required by the
5    program based on your ability to pay.  If you cannot afford it,
6    that will be waived.  But the fee will tend to be $10 per
7    session for a maximum of $40 per month.  But like I said,
8    that's based on your ability to pay.
9         I am going to order that you not purchase, possess,
10   subscribe, view, listen to, or use any media forms containing
11   pornographic images or sexually oriented materials including
12   but not limited to written, audio, and visual depictions such
13   as pornographic books, magazines, literature, and videos, DVDs,
14   and CDs.  Now, these materials contain -- the terms "sexually
15   explicit" is defined in 18 USC Section 2256(2).
16        You must not possess or use any computers or other
17   electronic communication or data storage devices or media
18   without permission from the probation office.
19        You must not access the Internet, except by reasons
20   approved in the advance by the probation officer.  You must
21   allow the probation officer to install computer monitoring
22   software on your computer, if the probation office deems that
23   you can use a computer.
24        To ensure compliance with the computer monitoring
25   condition, you must allow the probation office to conduct

1    initial and periodic unannounced searches of your computers.

2              Now, you must not participate in online gaming.  You

3    must not utilize or maintain any memberships or accounts in any

4    social networking websites or websites that allow minor

5    children memberships.

6              You must submit your person, property, house,

7    residence, vehicle, papers, and computers, or other electronic

8    communications or data storage devices or media, or office to a

9    search conducted by the United States probation office.

10   Failure to submit to search may be grounds for revocation or

11   release -- revocation of release.  You must warn any other

12   occupants that the premises may be subject to searches pursuant

13   to this condition.

14             You must not directly or indirectly contact the

15   victims or the victim by any means including in person, by

16   mail, electronically, telegraphically, or in any other way.

17             You are not to have contact with any children you

18   know or reasonably should know to be under the age of 18

19   without permission of the probation office.

20             You must not associate or have any contact with

21   convicted sex offender unless in a therapeutic setting.  You

22   must not date or befriend anyone who has a child or children

23   under the age of 18 without notifying the third party and the

24   probation office.  You must not go to or remain in any place

25   where you know children under the age of 18 are likely to be

1    present including parks, schools, playgrounds, and child care
2    facilities.
3           You must not reside in a residence where minor
4    children are residing.
5           Now, my notes here state that there is a required
6    restitution in the amount of $2,400, and I'll order you to pay
7    that.  And that is part of the mandatory victim's restitution
8    act of 1996.  While you're incarcerated, you'll have to pay
9    that at a rate of 50 percent of whatever you have on your
10   books.  Once you are released from in custody, you'll have to
11   pay that at a rate of ten percent of your gross monthly pay.
12          You must not incur any new charges or any debt
13   without the probation office giving you authority, and that's
14   just to help the probation office to collect the restitution.
15          You must not -- you must cooperate in the collection
16   of DNA.  I am not going to order you to pay a fine, but I am
17   going to order you to pay a $100 special assessment.
18          Now, Mr. Glover, I know that you want to make a
19   record on objecting to the upward variance, to preserve that
20   for appeal for Mr. Berrier.
21          MR. GLOVER:  I do, Your Honor.  Let the record
22   reflect that Mr. Berrier objects to the variance that the Court
23   has allowed to go up from the guideline range and that
24   Mr. Berrier may wish to appeal.
25          THE COURT:  Say that again.  You trailed off.

1          MR. GLOVER:  Mr. Berrier may wish to appeal as he
2     alluded to --
3          THE COURT:  Okay.
4          MR. GLOVER:  -- earlier in his remarks.  He
5     understands his appeal rights, and he may wish to appeal.
6          THE COURT:  And, Mr. Berrier, the fact that I did
7     vary upward gives you the right to appeal.  You had -- if you
8     choose to appeal, you have to appeal within 14 days of the day
9     that I enter the judgment.  And if you cannot afford the cost
10    of the appeal, you can ask for leave to appeal in forma
11    pauperis.  And if it's determined that you cannot afford it,
12    then you'll be allowed to file your appeal without paying the
13    filing fee or without -- or you'll have to pay it in
14    installments.
15         Also -- I'll let you speak.  Also, if you need a
16    lawyer on appeal, one will be appointed to represent you.
17         Now, what were you about to say, Mr. Berrier?
18         THE DEFENDANT:  That is what I was getting ready to
19    ask you.  Will the attorney do that for me?
20         THE COURT:  I'll tell you what we will do:  We will
21    get the judgment in in the next couple days, and that way
22    before Mr. Glover takes his position at the end of the year,
23    hopefully, he can get your appeal filed.  And then what will
24    happen is -- I'm not sure whether we appoint the lawyer to
25    represent you or if the Court of Appeals does.  But if I

1   appoint the lawyer to represent you, I'll get you somebody

2   appointed pretty quickly.

3           MR. GLOVER:  I think you do, Your Honor.

4           THE COURT:  Okay.

5           MR. GLOVER:  You appointed me to do an appeal a

6   couple years ago for Alex Coleman, and I think --

7           THE COURT:  Well, what we can --

8           MR. GLOVER:  I think that was after the judgment was

9   entered.

10          THE COURT:  Instead of you withdrawing, we can

11  just -- well, you can withdraw because your representation is

12  completed.  And then I will be prompted to file -- to appoint

13  him a lawyer.

14          MR. GLOVER:  I think that would be appropriate.

15          THE COURT:  Now, Mr. Berrier, I am sure that you

16  don't want to stay in West Tennessee.  Have you given any

17  thought to where you would like to serve your time?  Back in

18  North Carolina maybe?

19          THE DEFENDANT:  I would like to go somewhere where I

20  can like learn certain things.  Everybody says Texarkana has

21  a -- very good programs.  But how do you say?

22          THE COURT:  I can recommend -- if you'd like to be

23  sent to Texarkana, I can recommend Texarkana.

24          THE DEFENDANT:  Also, for the record, may I make a

25  statement for the record?

1        THE COURT:  You can.  You can.

2        THE DEFENDANT:  When I was talking to -- the last

3   time I had a conversation with T. (redacted), she told me she

4   was going to run away.  She was leaving school.  She had

5   someone from Facebook coming to get her right after school, and

6   this was just a couple hours, so that is how I knew what she

7   was doing.

8        I told her -- the whole thing -- the whole time --

9   the year and a half that I talked to her was to keep her from

10  running away.  When she refused to listen to me, you can go

11  back and look at my phone data from my download from my phone.

12  And it shows that I'm looking at fire suppression companies

13  in -- not Marion but the other one.  West Memphis -- in

14  Memphis.  I was looking for fire suppressions systems because

15  that's where -- her grandparents own a company -- own a

16  business.  Trying to -- while I'm talking to T., I am trying to

17  get their phone number so I can call and warn them that she is

18  getting ready to leave school with this friend she met on

19  Facebook, that she doesn't even know, to come out to North

20  Carolina to run away.

21        So then when I am looking at her information -- the

22  grandparents' information, I remember, well, they're in a

23  different town.  She's in Wynne, Arkansas going to school.  So

24  I had to call her mother at the veterinarian place where she

25  works, and she's been working -- there is only one veterinarian

1    place.  So I called.

2            And I knew -- T. always told me, if I ever called her

3    family and basically betrayed her trust, you know, that, you

4    know, it wouldn't go well.  And I figured -- I figured some --

5    I figured when I called her parents, you know, that would end

6    our complete relationship, but it would also put me in jail.

7            So when I was in South Carolina waiting at my

8    cousin's house when I made this phone call, I went to North

9    Carolina a few days later.  And my neighbor told me that the --

10   that Miss Tara -- I don't remember the last name, but the FBI

11   agent in North Carolina was at my house just the day before.

12           So I figured they were coming to her rescue.  So I

13   get on the phone to just go on home, and they'll get me.  And

14   that's not what she said.  She just told me to stay away from

15   her, you know, which I was in shock, but I didn't get in

16   trouble for -- you know, I wasn't being arrested.

17           I never tried to run.  I called -- I called the

18   family knowing that this was going to get me locked up.  I

19   mean, I have no ifs, ands, or buts about it.  I wasn't running

20   from 'emu.

21           In March of 2018 when they came to my house to do an

22   initial search on my house, I was again in North Carolina.  I

23   was told that they had a warrant.  And I called around to the

24   local police station, sheriff, and local FBI trying to get them

25   to come to arrest me in March.  And when they didn't -- when

1    they finally came to see me, they said, "We don't have a

2    warrant for your arrest; we have a warrant for your person."

3            I've never tried to run or to hide, and I put my

4    failing -- I put her safety over my freedom.  And I hope the

5    Court understands that.  But it still does not dispute anything

6    that I have done physically with T.

7            THE COURT:  All right.  Mr. Glover, is there anything

8    else we need to take up today?

9            MR. GLOVER:  No, Your Honor.

10           THE COURT:  Ms. Bryant, is there anything to take up?

11           MS. BRYANT:  No, Your Honor.

12           THE COURT:  All right.  Let's adjourn.

13           (Adjourned at 4:09 p.m.)

14                          -oOo-

15

16

17                  REPORTER'S CERTIFICATE

18

19

20       I certify that the foregoing is a correct transcript of

21   proceedings in the above-entitled matter.

22

23   /s/ Suzanne M. McKennon, CSR, CRR, RMR
     _____     Date:  01/19/2021
24   United States Court Reporter

25